FILED
AUG 1 5 2017
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRANDON MARSHALL,

    Plaintiff,

v.

ESURANCE INSURANCE SERVICES, INC.,

    Defendant.

Civ. No. 17-4111

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Brandon Marshall ("Plaintiff"), by and through his attorneys, Boyce Law Firm, L.L.P., and for his Complaint against Defendant Esurance Insurance Services, Inc. ("Defendant" or "Esurance"), states and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff, a male employed by Defendant from October 8, 2012, to June 30, 2016, brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII of the Civil Rights Act"), 42 U.S.C. § 2000e-2(a), as amended, and Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112, 12117, as amended. As a result, this Court has subject matter jurisdiction of this dispute under 28 U.S.C. § 1331.

2. Under 28 U.S.C. § 1367, this Court has pendant jurisdiction of the state-law claim asserted herein.

3. Additionally, or alternatively, under 28 U.S.C. § 1332, this Court has diversity jurisdiction of the state-law claim asserted herein.

1

4. Under 28 U.S.C. § 1391, venue is proper in the District of South Dakota because a substantial part of the events or omissions giving rise to the claims occurred in the District of South Dakota.

## PARTIES

5. Plaintiff was, at all times material hereto, an employee of Defendant and a resident of Sioux Falls, Lincoln County, South Dakota.

6. Esurance, a Delaware Corporation, with principal corporate offices in San Francisco, San Francisco County, California, was at all times material hereto, doing business in Sioux Falls, South Dakota.

## BACKGROUND

7. Plaintiff practices the Jewish faith.

8. Plaintiff has dyslexia and attention deficit hyperactivity disorder (hereinafter, "Disabilities").

9. Dyslexia impairs an individual's ability to read and is commonly characterized by difficulty with phonological processing, spelling, and/or rapid visual-verbal responding.

10. Attention deficit disorder ("ADD") is marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning.

11. Plaintiff's Disabilities allow him to process information quickly but also cause him to lose focus or incorrectly type or input information.

12. On October 8, 2012, Esurance hired Plaintiff as a multi-line sales agent at Esurance's office in Rocklin, California (hereinafter, "California Esurance Office").

13. On May 2, 2015, after Esurance granted Plaintiff's request for a transfer, Plaintiff relocated from the California Esurance Office to the Sioux Falls, South Dakota, call center location ("Sioux Falls Esurance Office.").

14. Plaintiff's job duties at the Sioux Falls Esurance Office included answering calls from customers and providing customers quotes on Esurance's insurance products.

15. Within the first few months of his employment at the Sioux Falls Esurance Office, Plaintiff informed management that he suffered from ADD and dyslexia, and that these Disabilities may cause him to incorrectly input information.

### *Religious Harassment & Failure to Accommodate*

16. Shabbat, which is the Jewish Sabbath, begins at sundown on Friday, and Plaintiff's faith requires him to attend religious services and to refrain from work on Friday evenings.

17. Because his normal work day was scheduled to begin at 10:00 a.m. and end at 6:30 p.m., Plaintiff anticipated that there would be a conflict with his religious obligations while working in the Sioux Falls Esurance Office in the fall and winter months.

18. Before Plaintiff began working in the Sioux Falls Esurance Office, he informed management that he practiced the Jewish faith, and that he may need to change his schedule in the fall and winter months to attend Shabbat services and to maintain his religious obligation to refrain from work on Friday evenings.

19. On July 22, 2015, Plaintiff sprained his ankle and was required to be out of work for a month.

20. When Plaintiff reported his injury to his supervisor, Jeremy Holsing ("Mr. Holsing"), Mr. Holsing told Plaintiff to "man up" and to "not be such a whiny Jew."

21. Plaintiff reported Mr. Holsing's anti-Semitic comments to the Human Resources Department and management. Upon information and belief, no action was taken.

22. Mr. Holsing was upset that Plaintiff had reported his comments to the Human Resources Department and management and later told Plaintiff that the issue should have been handled "man-to-man."

3

23.     In September or October 2015, Plaintiff asked Mr. Holsing if he could switch his schedule on Fridays to allow him to attend Shabbat services and to maintain his religious obligation to refrain from work on Friday evenings.

24.     Plaintiff followed the channels that Mr. Holsing and others suggested to pursue an accommodation for his religious beliefs, but he was told that no accommodation could be made.

25.     Only after Plaintiff indicated that he would retain an attorney was an accommodation for his religious practice granted.

26.     Even so, Plaintiff often worked late on Friday evenings as his supervisors made him feel guilty for leaving work early.

27.     In October 2015, a new sales position with the Cancel/Save Department became available, and Plaintiff informed Mr. Holsing that he wanted to be considered for that position and put in a request for it. As part of that request, Plaintiff sought accommodations to allow him to attend Shabbat services on Friday evenings and to maintain his religious obligation to refrain from work on Friday evenings.

28.     Upon information and belief, Mr. Holsing did not submit Plaintiff's request for the new sales position.

29.     Believing that Mr. Holsing was discriminating against him on the basis of his Jewish faith, Plaintiff reported Mr. Holsing's behavior to the Human Resources Department and management. Upon information and belief, no action was taken.

30.     In November 2015, as a result of the discrimination he was experiencing, Plaintiff switched teams to work under someone than Mr. Holsing.

31.     In early April of 2016, Plaintiff received a text message, stating as follows: "Don't play dumb you dirty Jew. You keep this up you won't have a job on Monday," and, "You keep messing with her and I'll end you. We have wiped plenty of Jews off this planet before. We don't need you at

4

work and we don't need you in our city. When you go back to California, stay there." A true and correct copy of these text messages is attached hereto as **Exhibit 1**.

32. Plaintiff reasonably believed that these messages were sent by or at the direction of an Esurance co-worker because they related to his employment, and because, upon information and belief, a friend of one of Plaintiff's supervisors had a telephone number that began with the same area code as the number from which the text messages came.

33. Plaintiff reported these April 2016 text messages to the Human Resources Department and management.

34. The Human Resources Department informed Plaintiff that they could not determine who sent the messages to him, and nothing more was done.

35. In May of 2016, Plaintiff and other Esurance employees won tickets from Defendant for a Sioux Falls Canaries baseball game. At this game, Erin Walth ("Ms. Walth"), who was a manager within the Human Resources Department, commented to Plaintiff that winning the tickets was "such a Jew thing," that he must be attending because the event was free, and that it was therefore so "Jewish" for him to attend. She also commented, "What does a Jew expect?"

36. Plaintiff reported Ms. Walth's comments to the Human Resources Department and management.

37. The Human Resources Department conducted an internal investigation by interviewing several witnesses, but, upon information and belief, no action was taken as a result of the investigation.

38. On numerous occasions, Plaintiff expressed to his co-workers that their comments regarding his religious faith were unwelcome.

5

*Written Warnings*

39. In June 2014, Plaintiff received a "Level One" written warning. As to the three allegations contained in the June 2014 written warning, Plaintiff had either been previously assured that the alleged practices were ethical, or he had not been previously told or counseled that these actions were unethical or against company policy.

40. After receiving the June 2014 written warning, Plaintiff spoke with the Human Resources Department and questioned whether he was being discriminated against on the basis of his Jewish faith. Upon information and belief, no action was taken as a result of his complaint.

41. On July 21, 2015, Plaintiff received a "Level Two" written warning. As to the six allegations contained in the July 21, 2015, written warning, Plaintiff had either been assured that the alleged practices were unethical or he otherwise had no reason to believe that the alleged practices were unethical or against public policy.

42. Two allegations set forth in the July 21, 2015, written warning were found to be meritless and were removed.

43. As a result of the July 21, 2015, written warning, Plaintiff lost his commission for two months.

44. After receiving the July 21, 2015, written warning, Plaintiff against spoke with the Human Resources Department and questioned whether has being discriminated against on the basis of his Jewish faith. Upon information and belief, no action was taken as a result of his complaint.

*Termination*

45. On June 13, 2016, Plaintiff was audited by Craig Clark ("Mr. Clark"), a branch manager in the Sioux Falls Esurance Office.

46. Mr. Clark accused Plaintiff of working with two customers at the same time, pulling drivers records without having customer authorization, and inputting incorrect credit card information.

47. At that time, Plaintiff reminded Mr. Clark that he suffers from ADD and dyslexia, and that his Disabilities may account for his errors.

48. At that time, Plaintiff also informed Mr. Clark that he believed that he was being unduly targeted and discriminated against on the basis his Jewish faith.

49. Following his June 13, 2016, discussion with Mr. Clark, and the discrimination that Plaintiff had suffered during his tenure, Plaintiff wrote a letter to the Human Resources Department and management informing them that he felt as though he was being unduly targeted and discriminated against on the basis of his Jewish faith and Disabilities. A true and correct copy of Plaintiff's June 18, 2016, email is attached hereto as **Exhibit 2**.

50. At no time did Plaintiff receive any response to or acknowledgement of his June 18, 2016, email.

51. Four days later, on June 22, 2016, Esurance produced an outlier report, which listed all agents that initiated invalid payment transactions between January 1, 2016, and June 15, 2016 (hereinafter, "the referenced time period"), and informed Mr. Clark of the report.

52. The June 22, 2016, outlier report indicated that the average agent initiated thirty-five invalid payment transactions during the referenced time period.

53. The June 22, 2016, outlier report indicated that Plaintiff had initiated 395 invalid payment transactions during the referenced time period.

54. The June 22, 2016, outlier report indicated sixteen agents had initiated 160 or more invalid payment transactions during the referenced time period.

55. Esurance determined that "any associate with more than 160 incidents between January 1, 2016, and June 15, 2016, where an MVR report was requested using an inaccurate credit card number would be terminated."

56. On June 30, 2016, just twelve days after receiving Plaintiff's June 18, 2016, letter reporting discrimination against him on the basis of his Jewish faith and Disabilities, Esurance terminated Plaintiff's employment.

57. Plaintiff was told that his employment was being terminated for, among other things, imputing too many invalid credit card numbers to run driving history data. A true and correct copy of the document setting forth Esurance's purported basis for the termination of Plaintiff's employment is attached hereto as **Exhibit 3**.

58. When he was terminated, Plaintiff again asserted that he believed that he was being discriminated against on the basis of his Jewish faith and Disabilities, and that he was being retaliated against for bringing his concerns to management's attention.

59. Upon information and belief, Esurance discharged two other employees soon after receiving the June 22, 2016, outlier report.

60. As of March 20, 2017, thirteen employees flagged in Esurance's outlier report as having initiated 160 or more invalid payment transactions during the referenced time period remained employed with Esurance, despite its pronouncement that they would be terminated.

61. Upon information and belief, Esurance used the June 22, 2016, outlier report as a pretext to terminate Plaintiff's employment.

62. One week after the termination of his employment, Plaintiff received a text message from an unknown number in which he was twice called a "Jew bag," in which the caller stated that "employment must suck," and "Next time don't try to get me looked at when its you that got fired." A true and correct copy of these text messages is attached hereto as **Exhibit 4**.

63. Because these text messages related to Plaintiff's employment, he reasonably believed that they were sent by or at the direction of a co-worker at the Sioux Falls Esurance Office.

64. On December 9, 2016, Plaintiff filed a formal Charge of Discrimination with the South Dakota Department of Labor and Regulation, Division of Human Rights, which was subsequently transferred to the Equal Employment Opportunity Commission ("EEOC") for investigation.

65. Following its investigation, on May 25, 2017, the EEOC issued Plaintiff a Dismissal and Notice of Rights. A true and correct copy of the Dismissal and Notice of Rights is attached hereto as **Exhibit 5**.

## COUNT I
### *Violation of Title VII of the Civil Rights Act*
### *(Religious Discrimination)*

66. Plaintiff incorporates Paragraphs 1 through 65, inclusive, as if set forth fully herein.

67. Esurance was an "employer" at all times material herein within the meaning of Title VII of the Civil Rights Act.

68. Esurance is engaged in an "industry affecting commerce" within the meaning of Title VII of the Civil Rights Act.

69. Plaintiff practices the Jewish faith and is a member of a protected class under Title VII of the Civil Rights Act.

70. Plaintiff was qualified for his position as a multi-line sales agent at Esurance.

71. Esurance was aware of Plaintiff's religious beliefs and practices.

72. While an employee for Esurance, Plaintiff was treated differently than similarly-situated employees due to his religious beliefs and practices as described in Paragraphs 1 through 65, inclusive, and this Court, including, but not limited to, meritless written warnings and disciplinary actions, difficulty in receiving reasonable accommodations to attend Shabbat and to maintain his

religious obligation to refrain from work on Friday evenings, and harassment from his supervisors and co-workers.

73. Plaintiff suffered adverse employment actions as a result of his Jewish faith, as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, the termination of his employment.

74. Esurance's proffered reasons for terminating Plaintiff's employment were pretextual.

75. Plaintiff's Jewish faith was an illegal factor under the law in Esurance's actions toward Plaintiff as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, the termination of his employment, and Esurance's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by Title VII of the Civil Rights Act.

76. Esurance's discriminatory employment practices based on Plaintiff's Jewish faith have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

77. The unlawful employment practices of which Plaintiff complains were intentional or done with malice and reckless indifference to Plaintiff's federally protected rights.

78. Because Esurance's discriminatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

79. Under Title VII of the Civil Rights Act, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

### COUNT II
*Violation of Title VII of the Civil Rights Act*
*(Religious Harassment)*

80. Plaintiff incorporates paragraphs 1 through 71, inclusive, of this Complaint as if set forth fully herein.

81. Plaintiff was subjected to repeated unwelcome harassment by his co-workers and supervisors during his employment with Esurance due to his religious beliefs and practices as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, meritless written warnings and disciplinary actions, difficulty in receiving reasonable accommodations to attend Shabbat and refrain from work on Friday evenings, and derogatory and anti-Semitic remarks from his supervisors and co-workers.

82. The repeated unwelcome harassment that Plaintiff endured at the hands of his co-workers and supervisors was based on his Jewish faith.

83. The conduct of Plaintiff's co-workers and supervisors was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would have found the work environment to have been hostile and abusive, thereby altering the conditions of his employment.

84. At the time such conduct occurred and a result of such conduct, Plaintiff did in fact believe his work environment to be hostile and abusive.

85. Esurance knew or should have known of the repeated unwelcome harassment Plaintiff endured at the hands of his co-workers and supervisors as he repeatedly reported it to the Esurance's Human Resources Department and to management.

86. Esurance failed to take prompt and appropriate correction action to end the harassment.

87. Esurance's actions toward Plaintiff as described in Paragraphs 1 through 65, inclusive, and this Count constitute an unlawful employment practice and pattern of discrimination prohibited by Title VII of the Civil Rights Act.

88. Esurance's discriminatory employment practices based on Plaintiff's Jewish faith have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

89. The unlawful employment practices of which Plaintiff complains were intentional or done with malice and reckless indifference to Plaintiff's federally protected rights.

90. Because Esurance's discriminatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

91. Under Title VII of the Civil Rights Act, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT III
### *Violation of Title VII of the Civil Rights Act*
### *(Failure to Accommodate Religious Practices)*

92. Plaintiff incorporates paragraphs 1 through 71, inclusive, of this Complaint as if set forth fully herein.

93. Plaintiff's Disabilities could have been reasonably accommodated without undue hardship.

94. Esurance refused and unreasonably delayed accommodating Plaintiff's religious practices and beliefs.

95. Esurance's failure to timely accommodate Plaintiff's religious practices and beliefs as described in Paragraphs 1 through 65, inclusive, and this Count constitutes an unlawful employment practice and pattern of discrimination prohibited by Title VII of the Civil Rights Act.

96. Esurance's discriminatory employment practices based on Plaintiff's Jewish faith have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

97. The unlawful employment practices of which Plaintiff complains were intentional or done with malice and reckless indifference to Plaintiff's federally protected rights.

98. Because Esurance's discriminatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

99. Under Title VII of the Civil Rights Act, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT IV
### Violation of the ADA
### (Disability Discrimination)

100. Plaintiff incorporates Paragraphs 1 through 65, inclusive, of this Complaint as if set forth fully herein.

101. Esurance was an "employer" at all times material herein within the meaning of the ADA.

102. Esurance is engaged in an "industry affecting commerce" within the meaning of the ADA.

103. Plaintiff was an individual with a "disability," as that term is defined by the ADA, namely Plaintiff has dyslexia and ADD.

104. Plaintiff's Disabilities substantially limit, among other things, his ability to read and concentrate, which are major life activities.

105. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA, as he is an individual with a disability who, with or without reasonable accommodations, could perform the essential functions of various positions for Esurance, including, but not necessarily limited to multi-line sales agent.

106. Esurance knew of Plaintiff's Disabilities.

107. Plaintiff suffered adverse employment actions as a result of his Disabilities, as described in Paragraphs 1 through 65, inclusive, including, but not limited to, the termination of his employment.

108. Esurance's proffered reasons for terminating Plaintiff's employment were pretextual.

109. Plaintiff's Disabilities were an illegal factor under the law in Esurance's actions toward Plaintiff as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, the termination of his employment, and Esurance's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by the ADA.

110. Esurance's discriminatory employment practices based on Plaintiff's Disabilities have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

111. The unlawful employment practices of which Plaintiff complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

112. Because Esurance's discriminatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

113. Under the ADA, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

### COUNT V
### *Violation of the ADA*
### *(Failure to Accommodate Disability)*

114. Plaintiff incorporates Paragraphs 1 through 65, inclusive, and Paragraphs 101 through 107, inclusive, of this Complaint as if set forth fully herein.

115. Plaintiff's Disabilities could have been reasonably accommodated.

116.  Esurance refused to reasonably accommodate Plaintiff's Disabilities and failed to engage in an interactive process with him to identify available reasonable accommodations.

117.  Esurance's discriminatory conduct resulted in the termination of Plaintiff's employment.

118.  Esurance's proffered reasons for terminating Plaintiff's employment were pretextual.

119.  Esurance's actions toward Plaintiff on the basis of his Disabilities constitute an unlawful employment practice and pattern of discrimination prohibited by the ADA.

120.  Esurance's discriminatory employment practices based on Plaintiff's Disabilities have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

121.  The unlawful employment practices of which Plaintiffs complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

122.  Because Esurance's unlawful employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

123.  Under the ADA, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT VI
### *Violation of Title VII of the Civil Rights Act*
### *(Retaliation)*

124.  Plaintiff incorporates Paragraphs 1 through 71, inclusive, as if fully set forth herein.

125.  Plaintiff engaged in protected conduct, including, but explicitly not limited to, reporting to Esurance's Human Resources Department and management that he believed that he was being discriminated against on the basis of his Jewish faith.

126. Plaintiff's protected conduct opposed unlawful employment practices occurring at Esurance.

127. Esurance was aware of Plaintiff's protected conduct.

128. Plaintiff suffered termination, which is an adverse employment action, as a result of his engagement in protected activity as described in Paragraphs 1 through 65, inclusive, and this Count, including, but explicitly not limited to, reporting to Esurance's Human Resources Department and management that he believed that he was being discriminated against on the basis of his Jewish faith.

129. A causal link exists between Plaintiff's protected activities and the adverse employment action.

130. Esurance's proffered reason for terminating Plaintiff's employment is pretextual.

131. Plaintiff's protected conduct was an illegal factor under the law in Esurance's actions toward Plaintiff as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, the termination of his employment, and Esurance's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by Title VII of the Civil Rights Act.

132. Esurance's retaliatory employment practices have caused Plaintiff to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

133. The unlawful employment practices of which Plaintiffs complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

134. Because Esurance's retaliatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

135. Under Title VII of the Civil Rights Act, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT VI
### *Violation of the ADA*
### *(Retaliation)*

136. Plaintiff incorporates Paragraphs 1 through 65, inclusive, and Paragraphs 101 through 107, inclusive, as if fully set forth herein.

137. Plaintiff engaged in protected conduct, including, but explicitly not limited to, reporting to Esurance's Human Resources Department and management that he believed that he was being discriminated against on the basis of his Disabilities.

138. Plaintiff's protected conduct opposed unlawful employment practices occurring at Esurance.

139. Esurance was aware of Plaintiff's protected conduct.

140. Plaintiff suffered termination, which is an adverse employment action, as a result of his engagement in protected activity as described in Paragraphs 1 through 65, inclusive, and this Count, including but explicitly not limited to, reporting to Esurance's Human Resources Department and management that he believed that he was being discriminated against on the basis of his Disabilities.

141. A causal link exists between Plaintiff's protected activities and the adverse employment action.

142. Esurance's proffered reason for terminating Plaintiff's employment is pretextual.

143. Plaintiff's protected conduct was an illegal factor under the law in Esurance's actions toward Plaintiff as described in Paragraphs 1 through 65, inclusive, and this Count, including, but not limited to, the termination of his employment, and Esurance's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by the ADA.

144. Esurance's retaliatory employment practices have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

145. The unlawful employment practices of which Plaintiffs complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

146. Because Esurance's retaliatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

147. Under the ADA, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT X

### *Intentional Infliction of Emotional Distress*

148. Plaintiff incorporates paragraphs 1 through 65, inclusive, of the Complaint as if fully set forth herein.

149. Esurance engaged in extreme and outrageous conduct by discriminating against Plaintiff on the basis of his Jewish faith and Disabilities, by failing to address religious harassment in his workplace, by failing to timely accommodate his religious practices and Disabilities, and by retaliating against him for engaging in protected activities.

150. Esurance intended to cause or recklessly caused Plaintiff severe emotional distress.

151. Esurance's conduct, in fact, caused Plaintiff to suffer severe emotional distress.

152. Plaintiff has suffered an extreme, disabling emotional response to Esurance's conduct.

153. Plaintiff has been damaged, in an amount to be determined, at trial, as a result of Esurance's intentional infliction of emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. For Plaintiff's damages, including, but expressly not limited to, back pay, in an amount to be determined at trial;

B. For front pay in an amount to be determined at trial;

C. For Plaintiff's compensatory damages in an amount to be determined at trial;

D. For punitive damages in an amount to be determined at trial;

E. For attorneys' fees, costs, and disbursements incurred herein; and

F. For such other and further relief as the Court deems just and equitable under the circumstances.

Dated this 15th day of August, 2017.

                                                                    _____
Jason R. Sutton
Meghann M. Joyce
David C. Stoos
BOYCE LAW FIRM, L.L.P.
300 South Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
jrsutton@boycelaw.com
mmjoyce@boycelaw.com
dcstoos@boycelaw.com
*Attorneys for Plaintiff Brandon Marshall*

## JURY DEMAND

Plaintiff hereby demands a jury trial on any and issues triable by a jury.